THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EMPLOYEE PAINTERS' TRUST HEALTH & WELFARE FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SNAP LINES, INC., <br><br> Defendant. | CASE NO. C10-5914-JCC <br><br> ORDER |

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment (Dkt. No. 25). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and denies the motion for the reasons explained herein.

## I.  BACKGROUND

This dispute arises out of a collective bargaining agreement concluded by the International Union of Painters and Allied Trades (IUPAT) and Defendant Snap Lines, Inc. Snap Lines was a small business that carried out painting projects on roads, parking lots, and some indoor surfaces until it ceased operating in April 2011. (Dkt. No. 29-3 at 2-3.) It was essentially a two-person business for most of its existence, with owners Derek Sterling and Tony Sherry performing most of the work the business secured. (*Id.*)

Snap Lines executed the collective bargaining agreement (CBA) concluded between IUPAT District Council No. 5 and Western Washington Signatory Painting Employers. The

CBA was effective between June 1, 2009 and May 31, 2012, and it required Snap Lines to make qualifying contributions to various trust funds established for the benefit of union workers. (Dkt. No. 25 at 3.) Snap Lines agreed under the CBA to submit periodic reports on contributions and to permit the IUPAT or its trust funds to audit Snap Lines' records to confirm compliance with the contribution requirements. (Dkt. No. 27 at 52.) The CBA also included provisions requiring Snap Lines to pay liquidated damages and other penalties for underpayments of wages and fringe benefits. (*Id.* at 53.)

Sometime in early 2011, an accountant retained by Plaintiffs conducted an audit of Snap Lines' records to assess compliance with the contribution requirements in the CBA. The accountant concluded that Snap Lines had committed several violations of those requirements, which resulted in underpayments of fringe benefits exceeding $320,000. (Dkt. No. 26 at 3.) Plaintiffs initiated this suit in December 2010, claiming breaches of the CBA and violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001, *et seq.* (Dkt. No. 1.) Plaintiffs now move for summary judgment on all claims. (Dkt. No. 25.) They also seek to hold Snap Lines' individual officers (Sterling and Sherry) personally liable for the alleged breaches of the CBA.

## II. DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact finder to find for the nonmoving party. *Id.* at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

Plaintiffs have not met their burden, and genuine issues of fact exist as to (1) whether

Snap Lines breached the CBA and (2) the amount of damages for any actual breach. Plaintiffs allege various violations of the agreement, including failure to report all employees performing work covered by the CBA, failure to make contributions for each hour worked by covered employees, and failure to withhold and pay union dues. (Dkt. No. 25.) However, the only evidence Plaintiffs offer in support of their arguments is the report of their retained accountant on the audit conducted in 2011. According to Snap Lines, the conclusions in that audit report were based on "mere assumptions that are demonstrably erroneous." (Dkt. No. 29 at 8-9.) Declarations from Sherry, Sterling, and Snap Lines' accountant state that the auditors did not seek or obtain any clarifying information about the employee records or invoices they inspected. (Dkt. Nos. 29-1 at 4, 29-2 at 2, 29-3 at 10.) Rather, Sterling avers that the auditors "simply assumed that all employees were 'journeyman' employees covered by the union contract and that any companies listed in Snap Lines records were automatically considered subcontracted work." (Dkt. No. 29-3 at 10.)

Such classifications are material in that they dictate whether the work was subject to the terms of the CBA. The CBA recognizes "only three (3) classifications of employees"—master traffic control stripers, journeymen, and apprentices. (Dkt. No. 27 at 39, 44.) According to Sterling, nearly every employee that the auditors categorized as journeymen were actually temporary "broom pushers" who were hired to help clean up work areas and who performed no actual painting work. (Dkt. No. 29-3 at 11-13.) Those employees did not have the training and qualifications required of journeymen, as enumerated in the CBA, nor did they perform the painting work that journeymen perform. (*Id.*) Nor, according to Sterling, were such employees training to become journeymen, as would be necessary to classify them as apprentices under the CBA. (*Id.* at 12.) Even if they could be labeled apprentices, the CBA exempts the first 500 hours of work by apprentices from fringe benefit contributions (Dkt. No. 27 at 51), and Sterling states that none of the employees worked more than 500 hours. (Dkt. No. 29-3 at 12.)

Plaintiffs respond that the CBA covers work that involves "the preparation and

ORDER
PAGE - 3

maintenance of all surfaces," a catch-all category that would include the work Sterling describes as "broom pushing." (*See* Dkt. No. 27 at 12-13.) But this argument ignores language limiting the scope of the CBA to "installation and construction employees"; the division of such employees into master traffic control stripers, journeymen, and apprentices; and the specific descriptions of the work performed by each of those classifications. (*Id.*) Snap Lines has submitted detailed evidence tending to show that nearly all of the employees in the audit report fell outside the categories of workers contemplated in the CBA and were therefore exempt from its provisions.

Plaintiffs further allege that Snap Lines violated the CBA by failing to notify the IUPAT before using subcontractors that were not signatories to the Western Washington Area Agreement.[1] Here again, however, Sterling contests the auditors' classifications of numerous business entities as subcontractors and provides detailed explanations for why the auditors' conclusions as to those entities were unsupported. (Dkt. No. 29-3 at 17-22.) Plaintiffs do not rebut this showing, nor do they argue that any failure to notify IUPAT of the intent to use subcontractors would have constituted a material breach of the CBA.

Snap Lines has submitted evidence calling into question each of the auditors' "findings" as to violations of the CBA. That evidence includes thorough explanations of the circumstances and nature of the purportedly noncompliant work—precisely the kind of explanation and support that is lacking in Plaintiffs' motion.

//
//
//
//

---

[1] The CBA provisions relating to subcontractors that Plaintiffs quote in their reply brief (Dkt. No. 30 at 6-7) do not correspond to the provisions Plaintiffs cite, and the Court has not been able to locate the quoted provisions elsewhere in the CBA.

ORDER
PAGE - 4

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (Dkt. No. 25) is DENIED.

DATED this 22nd day of December 2011.

John C. Coughenour
UNITED STATES DISTRICT JUDGE